# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LEVAR FIVE DAILY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:18-cv-0146** |
| | ) | |
| **CCA-WCFA WHITEVILLE TRANSPORT** | ) | **JUDGE CAMPBELL** |
| **OFFICERS** *et al.*, | ) | **MAGISTRATE JUDGE HOLMES** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff LeVar Five Daily, proceeding *pro se*, has filed a complaint against Defendants

CCA-WCFA Whiteville Transport Officers, Sergeant [F/N/U] Brown and Correctional Officer

[F/N/U] Caldwell.  (Doc. No. 1.)  Plaintiff also filed a supplement to the complaint.  (Doc. No.

4.)  Before the court is the plaintiff's application to proceed *in forma pauperis*.  (Doc. No. 2.)  In

addition, his complaint and supplement to the complaint are before the Court for an initial review

pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A,

and 42 U.S.C. § 1997e.

### I.  Application to Proceed as a Pauper

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be

permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a).  Because it

appears from his submissions that Plaintiff lacks sufficient financial resources from which to pay

the full filing fee in advance, the application (Doc. No. 2) will be granted.[1]

---

[1] Although Plaintiff did not include a certified copy of his prisoner trust-fund account statement,
in his application to proceed *in forma pauperis*, he explains that he tried to obtain a certified

However, under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff will be assessed the full $350 filing fee, to be paid as directed in the accompanying order.

## II. Initial Review of the Complaint

### A. Factual Allegations

In his complaint, the plaintiff alleges that on October 2, 2017, he was being transferred from CCA-WCFA at Whiteville to the Lois M. DeBerry Special Needs Facility ("LDSNF") in Nashville. (Doc. No. 1 at Page ID# 7.) Plaintiff alleges that he traveled this route frequently because of pending court cases and that LDNSF provides housing for transit inmates with pending charges. (*Id.*) Plaintiff alleges that Defendant Caldwell was driving and Defendant Brown was riding in the front passenger seat. (*Id.* at Page ID# 4, 7.) Plaintiff alleges that as was usual for this route, Defendant Caldwell was speeding, driving 80 to 90 mph. (*Id.* at Page ID# 7.) Plaintiff also alleges that another transport van was following the van in which he was riding. (*Id.*) Defendant Caldwell was driving with music blasting from his cell phone which was attached to the transport van speakers via a cord plugged into an auxiliary port. (*Id.*) At one point, Defendant Caldwell was fumbling with his phone—to scroll through a music play list or to text someone—and looked down at his phone. (*Id.*) By the time he looked up, Defendant Caldwell was heading right into a semi-truck at 85 to 90 mph. (*Id.*) Defendant Caldwell slammed on the brakes, lost control of the van for a few seconds, and then regained control of the van. (*Id.*) However, by the time Defendant Caldwell regained control of the van, Plaintiff had

---

copy of his trust-fund account statement but, officials at CCA-WCFA at Whiteville, the prison in which he is housed, would not comply with his request.

been bounced around the steel cage, with his head and neck striking the cage first, and then had to absorb the force of the three other inmates in the van slamming into him. (*Id.*) At the time of the incident, Plaintiff was shackled and handcuffed with a belly chain. (*Id.* at Page ID# 4.)

Plaintiff alleges that the initial contact between his head and the steel cage "knocked him out." (*Id.* at Page ID # 8.) When he came to he felt pain in his head and neck. (*Id.*) By the time the van made it to the "Hub," Plaintiff was experiencing severe back and neck pain. (*Id.*)[2] Plaintiff was "immediately seen by medical and the Doctor." (*Id.*) Plaintiff was prescribed a muscle relaxer and a pain pill and was given a steroid shot in his back. (*Id.*) Unfortunately, because Plaintiff has Type 2 diabetes, the shot nearly sent him into a diabetic coma. Plaintiff alleges that it has taken months to get his blood sugar under control and that he's still dealing with back and neck pain. (*Id.*) Plaintiff alleges that the Doctor prescribed him an x-ray and an MRI in October, but he has yet to have either imagining study done. (*Id.*) Plaintiff has been taken on and off different prescription medications as a result of his injuries and to relieve his pain. (*Id.*) Nevertheless, he is still experiencing pain and he alleges that he is "getting [the] run around[ ] [a]bout my x-ray, MRI, meds and medical att[e]n[tion] for these issues, still no help and no concern for either." (*Id.*)

In the supplement to the complaint, Plaintiff alleges that he continues to have difficulty getting medical attention for his injuries and pain and that he still has not obtained an x-ray or MRI. (Doc. No. 4 at Page ID#16.) Additionally, medical personnel have told Plaintiff that they do not have orders to obtain an x-ray or MRI of Plaintiff's back and neck, when, Plaintiff alleges, they do have the necessary orders. (*Id.*)

Plaintiff also notes that Defendant Caldwell and an inmate who was being transported with Plaintiff almost had a physical altercation after the incident when the inmate complained

---

[2] Plaintiff does not explain what the "Hub" is, but presumably it is somewhere within LDSNF.

that Defendant Caldwell should not have been tampering with his cell phone. (Doc. No. 4 at Page ID# 17.)

As relief, the plaintiff seeks immediate release form custody and money damages. (*Id.* at Page ID# 5.)

## B. **Standard of Review**

If an action is filed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as construed by *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§ 1915(e)(2)(B)(ii)] because the relevant statutory language tracks the language in Rule 12(b)(6)"). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the

claim rests.").

The court must construe a *pro se* plaintiff's complaint liberally, *Boag v. McDaniel*, 454 U.S. 364, 365 (1982), and accept the plaintiff's allegations as true unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *see also Williams*, 631 F.3d at 383 (recognizing that "[p]ro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." (internal quotation marks and citation omitted).) *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). The court is not required to create a claim for the plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her").

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

C. **Discussion**

Construing the complaint liberally, the facts alleged suggest that Plaintiff is claiming that his rights under the Eighth Amendment were violated in connection with his transportation from CCA-WCFA Whiteville to LDSNF, which resulted in his injuries, and as a result of the inadequate medical attention that he is receiving.

1. Defendant Brown

Although Plaintiff identifies Brown as a Defendant, he fails to allege that she engaged in any conduct that resulted in a violation of his constitutional rights.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall

6

far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendant Brown.

2. <u>Defendant CCA-WCFA Whiteville Transport Officer</u>

It is not entirely clear if Plaintiff intended to identify CCA-WCFA Whiteville Transport Officers as a separate defendant, or as a way of describing the job held by Defendants Caldwell and Brown. Regardless, however, for the reasons explained below, Plaintiff fails to state a claim upon which relief can be granted in connection with his transport from CCA-WCFA Whiteville to LDSNF.

3. <u>Eighth Amendment: Transportation</u>

Plaintiff alleges that he was injured when Defendant Caldwell became distracted by his cell phone and had to slam on the brakes of the transport van he was driving to avoid hitting an 18-wheeler truck that was in front of the van. Because the van abruptly slowed down, Plaintiff, who was handcuffed and shackled with a belly chain, hit his head and neck against the transport van's cage and then had to absorb the force of the three other inmates in the van slamming into him. Plaintiff alleges that his neck and back were hurt as a result of the incident and that he is still hurt.

The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Trop v. Dulles*, 356 U.S. 86 (1958). The clause therefore prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam)

7

(quoting *Rhodes*, 452 U.S. at 346.)

An Eighth Amendment claim comprises objective and subjective components:   (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer*, 511 U.S. at 837.  Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner.  *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2002) (finding that "mere negligence is insufficient as a matter of law to state a claim under section 1983.")

Plaintiff's allegations suggest, at most, that Defendant Caldwell was negligent when, while driving at excessive speeds, he allowed himself to be distracted by his cell phone, which resulted in him abruptly slowing the transport van to avoid hitting an 18-wheeler truck, causing Plaintiff's injuries.  Other than noting that Defendant Caldwell was driving at excessive speeds, Plaintiff's allegations do not suggest that Defendant Caldwell acted with deliberate indifference to a substantial risk to Plaintiff's safety.  Plaintiff does not suggest that Defendant Caldwell was driving too fast for the road conditions, that he was tailgating or following any other vehicles too closely, or that, prior to the incident with the 18-wheeler, Defendant Caldwell was driving

erratically. Likewise, Plaintiff does not suggest that anyone told Defendant Caldwell to slow down or that Defendant Caldwell's employing his cell phone was causing him to drive dangerously. Even if the Court assumes that Defendant Caldwell's distracted driving put the Plaintiff at risk of a sufficiently serious harm, none of Plaintiff's allegations suggest that Defendant Caldwell was deliberately indifferent to that risk. *See Farmer,* 511 U.S. at 835 (explaining that, "[t]he deliberate indifference standard "describes a state of mind more blameworthy than negligence.");  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"); *see also Crigger v. McIntosh,* 254 F. Supp. 3d 891, 899 (E.D. Ky. 2017) (finding that "there is nothing *inherently* careless or reckless about using a cell phone while driving." (emphasis in original).)  That Defendant Caldwell almost got into a physical altercation with another inmate after the incident, does not suggest anything about Defendant Caldwell's state of mind before the incident occurred and does not change the outcome here.

In those few instances where the courts have found that a constitutional violation may have occurred with respect to an incident occurring during the transportation of a prisoner, the plaintiff has typically alleged both that defendant refused to seatbelt him (or that there were no seatbelts) and purposeful, reckless driving by the defendant. *See, e.g., Brown v. Fortner*, 518 F.3d 552, 559–60 (8th Cir. 2008) (finding that "a reasonable jury could conclude that there was a substantial risk of harm to [the plaintiff] and that [the defendant] knew of and disregarded the substantial risk" where the plaintiff alleged that (1) his request to be seatbelted was denied; (2) the defendant was driving in excess of the speed limit; following too closely to the van in front of it; crossing over double-yellow lines; and passing other vehicles in no-passing zones; and (3) the inmates in the van asked him to slow down but he refused, and when pressed to slow down,

turned up the radio); *Brown v. Morgan*, No. 94–2023, 1994 WL 610993 (8th Cir. Nov.7, 1994) (holding that the plaintiff stated a claim under § 1983 based on deliberate indifference and not mere negligence where he alleged that he was injured in an accident while being transported in a vehicle driven by a sheriff's deputy, and the defendant "refus[ed] to let him wear a seat belt, [drove] at a high rate of speed in bad weather, refus[ed] to slow down despite [the plaintiffs] pleas for him to do so, purposely speed[ed] up, and smil[ed] when he saw that [the plaintiff] was scared, asking, 'Are you scared?' "); *Barela v. Romero*, No. 06–41 JBDJS, 2007 WL 2219441, at *7 (D.N.M. May 10, 2007) (holding that allegations of lack of seatbelt for shackled prisoner coupled with allegations of purposeful, reckless driving by defendant were sufficient to plead an Eighth Amendment claim).

Moreover, while Plaintiff does not state whether he wore a seatbelt or not, even if he had not, he still could not state an Eighth Amendment claim. Transporting inmates without seatbelts alone does not amount to the deliberate indifference required to constitute cruel and unusual punishment. *See, e.g., Smith v. Sec'y for the Dep't of Corrections*, 252 F. App'x 301, 304 (11th Cir. 2007) (failure to fasten inmate's seatbelt in converted utility van does not constitute a substantial risk of serious harm); Dexter v. Ford Motor Co., 92 F. App'x 637, 643 (10th Cir. 2004) (holding that "failure to seatbelt an inmate does not violate the Constitution"); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999) (failure to provide seatbelts or other safety restraints in patrol wagon did not constitute policy that presented a substantial risk of serious harm); *Walls v. Kaho*, No. 5:06cv188–MTP, 2009 WL 901917, at *2 (S.D.Miss. Mar.31,2009) ("Many courts . . . have held that there is no constitutional right of a prisoner to the use of a seatbelt while being transported, and that while failure to seatbelt a prisoner may give rise to a claim for negligence, it does not give rise to a cognizable constitutional claim."); *Ingram*

*v. Herrington,* No. 4:06–CV–P65–M, 2007 WL 2815965, at *5 (W.D.Ky. Sep.26, 2007) (holding that "the weight of authority from other circuits requires a finding that no Eighth Amendment violation occurs simply by transporting a prisoner unseatbelted in a prison vehicle," even where the plaintiff alleges that the driver exceeded the speed limit); *Young v. Hightower*, No. 04–10309, 2007 WL 2214520, at *6 (E.D.Mich. Jul.27, 2007) ("[N]o Eighth Amendment violation occurs simply by transporting a prisoner unseatbelted in a prison vehicle."); *Mojet v. Transport Driver*, No. 06:cv321, 2006 WL 3392944, at *2 (N.D.Ind. Nov.22, 2006) ("Transporting inmates in vans without seat belts does not meet the deliberate indifference standard."); *Williams v. City of New York*, No. 03 Civ. 5342(RWS), 2005 WL 2862007, at *3 (S.D.N.Y. Nov.1, 2005) (failure to provide seatbelts on prison transport van does not constitute a constitutional violation). The same rule has been applied even to situations involving handicapped prisoners. *See e.g. Dade v. Kennard*, No. 2:06CV869–TC, 2008 WL 4879168 (D.Utah Nov.3, 2008) (finding that the plaintiff, who was confined to a wheelchair, failed to state an Eighth Amendment claim despite alleging that he was regularly transported in a van that was not handicap-accessible and that the defendants routinely failed to properly fasten his seatbelt or to secure his wheelchair, so that it moved around during transport, causing injuries.)

Accordingly, Plaintiff's Eighth Amendment claim against Defendant Caldwell in connection with Plaintiff's transportation from CCA-WCFA Whiteville to LDSNF, fails to state a claim upon which relief can be granted.

### 4. Eighth Amendment: Medical Care

Plaintiff alleges that once he arrived at the "Hub" he was immediately seen by a physician at the medical clinic. The physician prescribed a muscle relaxer and pain pill, and gave Plaintiff a steriod shot, which interacted poorly with his diabetes and nearly put him in a

diabetic coma. The physician also prescribed two imaging studies—an x-ray and an MRI, which have yet to be completed. Additionally, Plaintiff notes that he has been taken off and put on a variety of medications to help him deal with his injuries and the attendant pain. He notes that he is still doing follow-up for his back and pain, and claims that he is getting the "run-around" regarding the x-ray and MRI, medications and medical attention for these issues.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

As with Plaintiff's previous claim, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. Gabehart v. Chapleau, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014) (finding no Eighth Amendment claim where physician immediately assessed decedent's condition and reasonably, but wrongly, diagnosed and treated his condition); *Kellerman v. Simpson*, 258 F. App'x 720, 725-27 (6th Cir. 2007)(explaining that, even assuming that the treating nurse provided negligent medical care, plaintiff must show more to sustain an Eighth Amendment claim); *McFarland v. Austin*, 196 F. App'x 410, 2006 WL 2572083, at *1 (6th Cir. 2006) (finding that plaintiff failed to state an Eighth Amendment claim where plaintiff received some medical attention and plaintiff's claims "involved a mere difference of opinion between him and medical personnel regarding his treatment.") "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate

as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 604-05 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

Plaintiff's allegations establish that he was given medical care shortly after the incident, that he has received at least some on-going treatment having tried, albeit unsuccessfully, a variety of medications to deal with his injuries and pain, and that he is continuing to attend follow-up visits. Plaintiff's objections to the alleged inadequacy of the treatment he is receiving—the failure of medical personnel to allow Plaintiff to have an x-ray or MRI and the inability of medical personnel to find the right medication(s) to treat his injuries and pain—do not elevate his claim to the level of an Eighth Amendment violation.

### 5. State Law Claims

To the extent that Plaintiff intends to allege any state law claims, those claims will be dismissed without prejudice. Claims under§ 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise such jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Accordingly,

Plaintiff's state law claims will be dismissed without prejudice.

### III.   CONCLUSION

Because the complaint does not contain sufficient facts to allege any claims upon which relief may be granted, this action will be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii). To the extent that Plaintiff raises any state-law claims, those claims will be dismissed without prejudice.

For the same reasons that the court dismisses this action, the court finds that an appeal of this action would not be taken in good faith. The court therefore certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by the plaintiff would not be taken in good faith, and the plaintiff will not be granted leave by this court to proceed on appeal *in forma pauperis*. An appropriate order is filed herewith.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE